UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

DWAYNE PARKER-EL,

                     Plaintiff,

      - against -

DETECTIVE WILBERT MORALES and DETECTIVE
MORALES-BELL,

                 Defendants.

----------------------------------------X

13 Civ. 6996(RWS)

OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/9/15

A P P E A R A N C E S

        Pro Se

        Dwayne Parker-El
        1011 Carroll Place 4B
        Bronx, NY 10456

        Attorneys for the Defendants

        ZACHARY W. CARTER
        Corporation Counsel of the City of New York
        100 Church Street
        New York, NY 10007
        By: Alexander M. Noble, Esq.

**Sweet, D.J.**

Defendants Wilbert Morales and Vivian Morales-Bell (the

"Defendants" or the "Detectives") have moved by letter of

December 15, 2014 to dismiss the lawsuit brought against them by

Plaintiff Dwayne Parker-El ("Parker-El" or the "Plaintiff")

pursuant to Federal Rule of Civil Procedure 12(b)(6). Also

pending before the Court is Plaintiff's June 29, 2015 motion for

a stay. For the reasons stated below, both motions are denied.

## Prior Proceedings

On October 1, 2013, the Plaintiff filed a prisoner

complaint under 42 U.S.C. § 1983, alleging that the Defendants,

detectives in the New York City Police Department, entered his

home and arrested him without a warrant, in violation of Payton

v. New York, 445 U.S. 573 (1980). (Dkt. No. 2.) On October 11,

2013, the Court issued an Order of Service, setting out the

procedures by which the Plaintiff could serve the Defendants.

(Dkt. No. 6.) After the Plaintiff did not meet the deadline for

service, the Court dismissed the case for failure to prosecute

on April 24, 2014. (Dkt. No. 7.) Plaintiff filed a letter on

June 6, 2014, stating that he could not comply with the Order of

Service because he had not received it due to a mix-up with his

2

roommate's mail, and because he had been in poor health. (Dkt. No. 8.) The Court granted Plaintiff an additional 30 days for service by Order of June 30, 2014 (Dkt. No. 9) and Parker-El delivered the service package to the U.S. Marshals on July 25, 2014.

The Defendants filed a letter on December 5, 2014 (Dkt. No. 14), which the Court treated as a motion to dismiss. (Dkt. No. 15.) When Parker-El did not oppose the motion, the Court granted it by Order of January 3, 2015. (Dkt No. 17.) Parker-El filed a motion to reconsider on January 15, 2015, stating that he had not received the motion to dismiss because of homelessness. (Dkt. No. 18.) By Order of February 18, 2015, the Court granted the motion for reconsideration and reinstated the case, allowing Parker-El 45 days to oppose the motion to dismiss. (Dkt. No. 23.) On April 14, 55 days after the February 18 Order, Plaintiff filed a request for pro bono counsel, which the Court denied without prejudice two days later. (Dkt. Nos. 24 & 26.) Parker-El filed a letter requesting more time on April 21, which the Court granted three days later. (Dkt. Nos. 27 & 28.) Parker-El filed his opposition on April 28, 2015. (Dkt. No. 29.) After obtaining an extension of their own (Dkt. No. 31), the Defendants filed their reply on May 15, 2015. (Dkt. No. 33.) The motion was heard on submission on May 20, 2015. With the permission of the

Court (Dkt. No. 35), Parker-El filed a sur-reply on July 2, 2015. (Dkt. No. 37.)

On June 29, 2015, Parker-El filed a motion to stay the case until the completion of state court proceedings against him. (Dkt. No. 36.) The motion was heard on submission on July 22, 2015, without any opposition having been received from the Defendants.

## Applicable Standard

In deciding a motion to dismiss, the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in favor of the Plaintiff, as the non-moving party. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). The Court then determines whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quotation omitted). The issue "is not whether a plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." Todd v. Exxon Corp., 257 F.3d 191, 198 (2d Cir. 2001) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).

The decision to stay a case is committed to the district court's discretion, and the party seeking a stay "bears the

4

burden of establishing its need." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 96-97 (2d Cir. 2012) (citing Clinton v. Jones, 520 U.S. 681, 706-08 (1997). The authority to stay a pending action "is an aspect of [the Court]'s broad and inherent power over its own process, to prevent abuses, oppressions and injustice, so as not to produce hardship, and to do substantial justice. In issuing a stay, a court must weigh competing interests and maintain an even balance." Flo & Eddie, Inc. v. Sirius XM Radio Inc., No. 13 Civ. 5784, 2015 WL 585641, at *4 (S.D.N.Y. Feb. 10, 2015) (quoting Soler v. G&U Inc., 86 F.R.D. 524, 526 (S.D.N.Y. 1980)).

**The Motion to Dismiss is Denied**

Construing the Plaintiff's complaint liberally, as required in pro se cases, see McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004), the Court takes the Plaintiff's § 1983 claim to be one for false arrest.[1]  Under New York law, which provides the frame of reference for the § 1983 claim, see Vallen v. Connelly,

---

[1] The Defendants suggest that Parker-El also brings a claim for malicious prosecution (D.'s Reply Mem., Dkt. No 33, at 5), but the Plaintiff's Complaint is narrowly limited to the events of his arrest on the night of October 3, 2010.  (See Complaint, Dkt. No. 2, at 2-3.)  The Plaintiff also disavowed any such claim in his sur-reply.  (Dkt. No. 37, at 4.)  Similarly, although the Plaintiff's opposition brief makes a number of sweeping denunciations of the procedures followed at his trial (e.g., D.'s Opp. Mem., Dkt. No. 29, at 7-9), the narrowly-focused nature of his Complaint means that the instant case is limited to the circumstances of his arrest.

36 F. App'x 29, 31 (2002), a plaintiff seeking to establish a
false arrest must show that 1) the defendants intended to
confine him, 2) the plaintiff was conscious of the confinement,
3) the plaintiff did not consent to the confinement, and 4) the
confinement was not otherwise privileged. Broughton v. State,
37 N.Y. 2d 451, 456 (1975); see Weyant v. Okst, 101 F.3d 845,
852 (2d Cir. 1996) (declaring in a § 1983 case against two NYPD
officers that "a plaintiff claiming false arrest must show,
*inter alia*, that the defendant intentionally confined him
without his consent and without justification.").

Parker-El's § 1983 Complaint alleges damages from "a
warrantless, non-consensual entry into my apartment where no
exigent circumstances existed so that the [] detectives could
make a misdemeanor arrest." (Complaint, Dkt. No. 2, at 3.)
According to Parker-El, whose allegations the Court accepts as
true when resolving a motion to dismiss, see Roth v. Jennings,
489 F.3d 499, 501 (2d Cir. 2007), the circumstances of his
arrest occurred as follows:

> [T]here was a knock at my apartment door.  I opened the
> door seeing the two people who had earlier rang the bell.
> When I opened my door I stood beyond the threshold of my
> door way on the inside of my apartment and they stood on
> the opposite side of the threshold after speaking with
> what I learned was the two detectives for a few minutes,
> I pushed the door so as to close it while stepping away
> from it.  Detective Morales-Bell stopped the door from
> closing and yelled out "WE CAN COME IN!" "WE CAN COME
> IN!" I said, shocked and at that point very nervous, No
> you can't.  Continuing to claim they were investigating

6

a kidnapping they asked me 3 times to come to the
Precinct with them and each time I refused, then
Detective Morales-Bell yells "YOU HAVE TO COME WITH US!"
"YOU HAVE TO COME WITH US!", at that I became afraid for
myself, my father and my son, who were in my father's
room, which we were standing in front speaking when this
occurred.  Based on the tone of the Detective's voice
and her body language I feared they were about to get
violent so I involuntarily went with them and was
imprisoned for 18 months.

(Complaint, Dkt. No. 2, at 3.)  These allegations, accepted as
true for the purposes of the motion to dismiss, are sufficient
on their face to establish the first three prongs a claim for
false arrest.

The Defendants' primary argument in favor of dismissal is
that the Complaint runs afoul of the Supreme Court's ruling in
Heck v. Humphrey, which holds that "in order to recover damages
for allegedly unconstitutional conviction or imprisonment, or
for other harm caused by actions whose unlawfulness would render
a conviction or sentence invalid, a § 1983 plaintiff must prove
that the conviction or sentence has been reversed on direct
appeal, expunged by executive order, declared invalid by a state
tribunal authorized to make such determination, or called into
question by a federal court's issuance of a writ of habeas
corpus."  512 U.S. 477, 486-87 (1994) (footnotes and citations
omitted).  It is undisputed that Parker-El was convicted of four
misdemeanor sex crimes – Forcible Touching, in violation of N.Y.
Penal Law § 130.52, Attempted Sexual Abuse in the Second Degree,

7

in violation of N.Y. Penal Law § 130.60, Attempted Endangering

the Welfare of a Child, in violation of N.Y. Penal Law § 260.10,

and Public Lewdness, in violation of N.Y. Penal Law § 245.00.[2]

(See Pl's Opposition, Dkt. No. 29, at 7 (acknowledging the

convictions, but asserting that they were the result of "a

jurisdictionally infirm trial); id. at 12 (attaching a

certificate of disposition indicating that Parker-El was found

guilty on the four charges).)   The City contends that unless he

can show that those convictions were wiped out, Parker-El cannot

sustain a § 1983 claim.

The Supreme Court has laid out the standard by which

district courts are to evaluate whether Heck bars a plaintiff's

claim:

> the district court must consider whether a judgment in
> favor of the plaintiff would necessarily imply the
> invalidity of his conviction or sentence; if it would,
> the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already
> been invalidated. But if the district court determines
> that the plaintiff's action, even if successful, will
> *not* demonstrate the invalidity of any outstanding
> criminal judgment against the plaintiff, the action
> should be allowed to proceed, in the absence of some

---

[2] The parties differ on whether Parker-El pled guilty or was found guilty
after a trial, with the Defendants arguing that a guilty plea by Parker-El
acts as a waiver to future objections regarding the constitutionality of his
arrest.   See Rossi v. New York City Police Dep't, No., 94 Civ. 5113, 1998 WL
65999, at *4 (S.D.N.Y. Feb. 17, 1998).   Parker-El argues that he never pled
guilty and attaches both a Certificate of Disposition indicating that he was
found guilty (Dkt. No. 29 at 12) and a letter from the Bronx Criminal Court
indicating that there is a "discrepancy" as to whether he pled guilty, but
that the Court has lost his case file.   (Id. at 13.)   For the purposes of
this motion, where all reasonable inferences are drawn in the Plaintiff's
favor, the Court assumes without deciding that Parker-El was found guilty at
trial.

other bar to the suit.

Heck, 512 U.S. at 487. The Defendants argue, without citing to
any authority, that the plaintiff's false arrest claim, "if
successful, would necessarily imply that his . . . conviction is
invalid." (D.'s Reply Brief, Dkt. No. 33, at 3.) The Second
Circuit has rejected this argument, holding that "Fourth
Amendment claims for unlawful arrest . . . do not ordinarily
fall within the Heck rule, since a finding for the plaintiff
would not necessarily demonstrate the invalidity of any
outstanding criminal judgment against the plaintiff, at least
unless the conviction was dependent on evidence obtained as a
result of the arrest. Fifield v. Barrancotta, 353 F. App'x 479,
480-81 (2d Cir. 2009) (quotations and citations omitted); see
also Vallen, 36 F. App'x at 31; Poventud v. City of New York,
750 F.3d 121, 132 (2d Cir. 2014) ("When a plaintiff is
unlawfully arrested . . . his § 1983 claim accrues before any
conviction."). As there is nothing in the record to indicate
that evidence discovered during the arrest played a role in his
conviction, Parker-El's claim for false arrest falls outside of
Heck's prohibition.

Having determined that Parker-El's claim is not barred by
Heck, the Court next considers whether he has adequately alleged
claims under the Fourth Amendment. Monroe v. Myskowsky, No. 12

9

Civ. 5513, 2014 WL 496872, at *4 (S.D.N.Y. Feb. 6, 2014).  This
determination overlaps with the fourth element of a claim for
false arrest – whether the Defendants' actions were privileged.
See Weyant, 101 F.3d at 852 (noting that the two issues are
"substantially the same").

"[T]he Fourth Amendment has drawn a firm line at the
entrance to the house," Payton, 445 U.S. at 590, and federal
courts therefore treat warrantless entries as presumptively
unreasonable.  U.S. v. Emanus, 391 F. App'x 66, 67 (2d Cir.
2010).  To overcome that presumption, officers must show both
that there was probable cause to believe a crime was being
committed or evidence of a crime would be found, and that
exigent circumstances justified warrantless entry.  Id.  (citing
Kirk v. Louisiana, 536 U.S. 635, 638 (2002)).  While the
officers' alleged entry into Parker-El's apartment was limited
to putting something in between his door and its frame to
prevent him from closing the door on them, even this small
invasion is sufficient to implicate Payton.

The law on arrests made in and around the threshold of the
home is governed by two somewhat contradictory cases.  Payton
requires a warrant to cross the doorway, holding that "[a]bsent
exigent circumstances, that threshold may not be reasonably
crossed without a warrant."  Payton, 445 U.S. at 590.  But in
its earlier decision in United States v. Santana, 427 U.S. 38

10

(1976), the Court had held that where a suspect was standing
"directly in the doorway" in such a way that "one step forward
would have put her outside, [and] one step backward would have
put her in the vestibule of her residence," she could be
arrested without a warrant because she was in a public place,
"as exposed to public view, speech, hearing, and touch as if she
had been standing completely outside her house." Id. at 40 n.1,
42. The Second Circuit has declined to resolve the ambiguity,
instead reserving the question of whether a defendant loses the
protection of Payton simply by opening his door in response to a
knock by unidentified police officers. See U.S. v. Bedell, 311
F. App'x 461, 464 (2d Cir. 2011); see generally U.S. v. Real
Property and Premises Known as 90-23 201st Street, Hollis, New
York, 775 F. Supp. 2d 545, 558-60 (E.D.N.Y. 2011) (reviewing the
Second Circuit's jurisprudence on the issue). To the extent
that a firm rule can be determined, it is that "Payton applies
to doorway arrests, except in the limited circumstances in which
an individual voluntarily opens his door in such a manner that
he exposes himself to public view, speech, hearing, and touch as
if he is standing completely outside his home." 201st Street,
775 F. Supp. 2d at 560.

Here, according to Parker-El, whose allegations must be
accepted as true for the purposes of the motion to dismiss, he
"stood beyond the threshold of my door way on the inside of my

11

apartment and [the officers] stood on the opposite side of the threshold." (Complaint, Dkt. No. 2, at 3.) Later on in the conversation, he attempted to shut the door, only for the police officers to stop the door from closing. The Second Circuit considered a similar set of circumstances in Loria v. Gorman, 306 F.3d 1271 (2d Cir. 2002), choosing to apply Payton because the plaintiff in that case "was not in the doorway. Rather, he was at least a door's width inside the house when he attempted to close the door." Id. at 1286. In doing so, it cited to then-Judge, now-Justice Sotomayor's dissent in U.S. v. Gori, 230 F.3d 44, 60-61 (2d Cir. 2000), which stated that "Payton did not draw the line one of two feet into the home; it *drew the line at the home's entrance*." Loria, 306 F.3d at 1286 (emphasis in Gori). Much like the instant case, Loria involved an officer who "stuck out his arm and leaned into the door" in order to "prevent the door from closing." Id. at 1276. Later in the opinion, the Second Circuit declared that "[n]o invasion of the sanctity of the home can be dismissed as *de minimis*." Id. at 1284; accord Kyllo v. U.S., 533 U.S. 27, 37 (2001) (warrant required for "any physical invasion of the structure of the home, by even a fraction of an inch") (quotation omitted).

12

Based on the Second Circuit's holding in Loria, Payton, rather than Santana, governs the circumstances here.[3]

The Defendants cite cases for the proposition that Parker-El's subsequent conviction establishes the existence of probable cause, and thus the validity of his arrest. See Barmapov v. Barry, No. 09-CV-3390, 2011 WL 32371, at *4 (E.D.N.Y. Jan. 5, 2011); Grullon v. Reid, No. 97 Civ. 7616, 1999 WL 436457, at *7 (S.D.N.Y. June 24, 1999). But establishing probable cause only gets the Defendants halfway to a dismissal – "[a]s Payton makes plain, police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." Kirk, 536 U.S. at 638; accord Emanus, 391 F. App'x at 67. Even if probable cause is treated as established, there is no indication of any warrant or exigent circumstances among the facts alleged in the Complaint, which the Court takes as true for the purposes of the motion to dismiss. On the basis of those facts, therefore, Parker-El has stated a § 1983 claim for false arrest.

The Defendants also contend that Parker-El's claim must be dismissed because it fails to allege any actual, compensable

---

[3] Although Parker-El's Complaint is clear on the circumstances surrounding his attempt to close the door, it is somewhat vague on how the officers actually took him into custody, stating only that he "involuntarily went with them." (Complaint, Dkt. No. 2, at 3.) Since the Court is obligated to draw all reasonable inferences in a plaintiff's favor when resolving a motion to dismiss, see Simon v. Keyspan Corp., 694 F.3d 196, 198 (2d Cir. 2012), the Court assumes for the purposes of this motion only that Parker-El was arrested and did not willingly leave his apartment.

injury stemming from his alleged false arrest. (D.'s Reply Mem., Dkt. No. 33 at 4-5.) Although the Defendants are correct that Parker-El's Complaint fails to allege any personal injury or property damage stemming from the arrest (see Dkt. No. 2 at 5), a successful § 1983 plaintiff may still recover nominal damages and punitive damages, even in the absence of actual harm. See Robinson v. Cattaraugus County, 147 F.3d 153, 162 (2d Cir. 1998) ("If a jury finds that a constitutional violation has been proven but that the plaintiff has not shown injury sufficient to warrant an award of compensatory damages, the plaintiff is entitled to an award of at least nominal damages as a matter of law."); McCord v. City of New York, No. 13 Civ. 2008, 2014 WL 2567108, at *3 (S.D.N.Y. June 6, 2014) ("[I]f Plaintiff fails to demonstrate compensable injury, punitive or nominal damages may still be available for any Fourth Amendment violation that he succeeds in proving."). Parker-El's claim may therefore proceed.

**The Motion for a Stay is Denied**

Parker-El has separately moved to stay the case "until the completion of the state court proceedings." It is unclear from his motion what state court proceedings he refers to, as the October 2013 arrest at issue in this case was for a criminal

14

case in which he was found guilty on July 30, 2014 and sentenced on October 30 of the same year. (See Dkt. No. 29 at 12.) A stay of a civil case to permit the conclusion of a related criminal proceeding is "an extraordinary remedy," and generally comes about when courts are concerned with the possibility that a civil case will unduly burden a defendant's Fifth Amendment right against self-incrimination. Louis Vuitton Malletier S.A. v. LY USA, Inc. 676 F.3d 83, 97 (2d Cir. 2012). Parker-El has not explained why any such issues are implicated here, or indeed given any grounds for a stay beyond unspecified health and financial hardships involved in litigation. (See Pl.'s Mot. for Stay, Dkt. No. 36, at 2.) As the party seeking a stay, it was Parker-El's burden to establish its need. Louis Vuitton, 676 F.3d at 97. That showing has not been made.

**Conclusion**

Based on the foregoing, the Defendants' motion to dismiss and the Plaintiff's motion for a stay are both denied.

15

It is so ordered.

New York, NY
September ____, 2015
October 9

ROBERT W. SWEET
U.S.D.J.