UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV. 6996 (RWS)

Dwayne Parker-El

    Plaintiff,
    -against -

AMENDED COMPLAINT

42 USC § 1983
Jury Trial Requested

CITY OF NEW YORK,
NEW YORK POLICE DEPARTMENT,
DETECTIVE WILBERT MORALES,
DETECTIVE VIVIAN MORALES-BELL

    Defendants.

I, Dwayne Parker-El, Plaintiff in this action, hereby pursuant to F. R. Civ. P. Rule 15(a)(2) *second sentence*, amend the complaint filed on October 1, 2013. This complaint is amended with leave of the Court as having been granted thereby in its order dated March 24, 2016.

On October 1, 2013, at the time the plaintiff filed his complaint, he was not then a 'prisoner'. Plaintiff filed that complaint in person at the Court's Pro Se office, and although the 42 USC § 1983 complaint form which the Pro Se office provides to such litigants characterizes it as a "Prisoner Complaint", which the complaint is characterized as in the Court's October 9, 2015 order (P. 2 ¶ 2) the Plaintiff, at the time, was not imprisoned.

So as to clarify details relative to the Payton issue(s) in relation to the arrest in a way that Plaintiff was unable to in the original complaint, due to the limited space on the original complaint form, they are as follows:

Plaintiff at the time of the arrest lived in an apartment building. Plaintiff's was one of two apartments located on the eastern side of the building, with its entrance separate from that of the main entrance to the building. Plaintiff's apartment was not accessible by going into the building's main entrance.

Upon entering the vestibule, by which, only the Plaintiff's apartment and his then-neighbor's apartment could be accessed, the two respective apartment doors were visible. Prior to entering that vestibule, Plaintiffs apartment door could not be seen by any passing member of the public, even if one were to stand as close as possible to the vestibule door, though his then-neighbor's apartment door could be seen by standing at the vestibule doorway looking in. In order for one to have seen the plaintiff's apartment, they would have had to step into the vestibule and looked to the left.

Were the Plaintiff to open his door wide and just stood there without stepping into the vestibule, he could not be seen by a member of the public, only his neighbor would have been able to see him, which, relative to the instant matter was not the case because at the time he opened his door to the detectives, the neighbor's door was closed. The Plaintiff and the Detectives stood on opposite sides of the threshold to the Plaintiff's then-apartment.

Prior to first opening his door to the Defendants, Plaintiff answered the ringing of the buzzer to his then-apartment, which was located just outside of and to the left of the vestibule doorway (when facing the door from outside). Using the intercom Plaintiff asked "WHO IS IT ?" twice, getting no answer, Plaintiff then opened his apartment door (APT. 1A) and walked the short distance to the vestibule doorway and looked through its window to see who had rang the buzzer.

Outside, a man and a woman were standing talking to one another, they looked to the Plaintiff to be Caucasian. Plaintiff opened the vestibule door and heard that the two individuals were speaking in Spanish. At that point, because Plaintiff's only neighbor was fluent exclusively in Spanish and a daycare operator, Plaintiff said to the man and woman 'you want apartment 1B', Plaintiff presumed they were looking for daycare services. They acknowledged the Plaintiff

with something of a headshake, did not immediately come into the hallway instead holding the door open as the Plaintiff let it go. They continued to speak in Spanish as they held the vestibule door open as the Plaintiff went back into his apartment and began to do something near the now closed his apartment door.

A short time later Plaintiff heard the Defendants in the vestibule speaking to someone that the Plaintiff presumed to be his neighbor. Plaintiff heard his neighbor's door close after the Defendants had finished speaking to his neighbor. Almost immediately thereafter, the Defendants knocked on Plaintiff's door. When the Plaintiff opened his door, the Defendants, who the Plaintiff still had no idea were Detectives, were standing in the vestibule on that side of the doorway threshold, the Plaintiff stood inside his apartment about a foot beyond the doorway threshold.

One of the Defendants said something to the Plaintiff speaking in Spanish. Plaintiff politely responded "no hablo espanol," (which means "I don't speak Spanish") which is, embarrassingly, one of the only things Plaintiff knows how to say in Spanish. Then the same Defendant asked the Plaintiff, in English, did the Plaintiff know someone by the name of either Joel or Louie Ortiz. Plaintiff responded that he did not know anyone by that name. After a couple more minutes of speaking with the Defendants, Plaintiff realized that they were police detectives, which they never told the Plaintiff, and they were looking for someone in the investigation of a kidnapping of a mother and her daughter.

At a certain point, Plaintiff pushed the door so as to close it while simultaneously stepping away from it. Defendant Morales-Bell stopped the door from closing while yelling "WE CAN COME IN ! ! !" "WE CAN COME IN ! ! !" and at the same time coming into the Plaintiff's then-apartment as the Plaintiff said very nervously "NO YOU CAN'T."

After detective Morales-Bell stopped the door from closing, yelled "WE CAN COME IN ! ! !" "WE CAN COME IN ! ! !" while stepping into the Plaintiff's then-apartment, unwarranted and without Plaintiff's consent and absent exigent circumstances, (see the Court's October 9, 2015 order P. 6 last paragraph), the two detectives and the Plaintiff were fifteen to twenty feet into the Plaintiff's apartment and standing in front of the Plaintiff's Father's bedroom, where Plaintiff's then-fifteen year old son was laying on the bed next to his grandfather. That is where the detectives and Plaintiff were standing when detective Morales-Bell yelled out "YOU HAVE TO COME WITH US ! ! !" "YOU HAVE TO COME WITH US ! ! !" and moved somewhat suddenly as if to reach for her weapon, subsequent to the Plaintiff, three times, telling the detectives that he was not going with them to the police station.

The Detectives never stated their purpose and authority or reason for Plaintiff's arrest, prior to or at the time of entry into Plaintiff's apartment or seizure of the Plaintiff in his apartment, as is required by law (N.Y. Criminal Procedure Law – "CPL" 140.15(2) ).

The detectives told the Plaintiff that they were investigating the kidnapping of a mother and her young daughter, and on that basis they wanted the Plaintiff to accompany them to the precinct when they had known that they intended to leave the Plaintiff's apartment with the Plaintiff under arrest. At that point, the Plaintiff believed that he was not free to leave or go about his business or to tell the Defendants to leave his apartment. Plaintiff believed that the detectives would seriously harm or injure him and possibly his father and son if they were to use their weapons or in seizing him with the use of excessive physical force in order to take him into custody if he had again stated that he was not going with them. At that point, Plaintiff became traumatized with the fear of what the Defendants might do to him. Plaintiff was aware of several cases that had received a lot of media attention relative to some of the things the police had done

to certain individuals that did not make it through their encounters with the police.

Shortly after arriving at the police station, as Detective Morales had the Plaintiff to empty his pockets, Plaintiff showed Detective Morales the card of an attorney representing Plaintiff on another matter at the time, attorney Goetz L. Vilsaint, Plaintiff immediately informed the detective that he wished to call the attorney. Detective Morales' response was "later." "Later" never came even as Plaintiff repeated his request several times to Detective Morales, who, then, was totally unresponsive to Plaintiff regarding that request. Also at this time, Detective Morales had Plaintiff to remove his belt and his shoe laces. Detective Morales never returned any of the items he confiscated back to the Plaintiff, they were given to the Plaintiff's Father on a day subsequent to their taking.

The complainant in the underlying criminal case, according to the Sprint report of the 911 call that she made almost immediately following the incident, described the perpetrator of the incident as being 6 feet tall, thin and approximately 30 years old. Complainant also testified that she saw this same individual two days prior to the incident, the conditions were well lit and there were other people around so that there was no reason for her to be alarmed by him, she saw him clearly and testified that he even had on the same clothes he wore on the day of the incident.

The information the Detectives had at the time they first encountered the Plaintiff, at least in significant part, at his home was that they were looking for a suspect that was approximately 6 feet tall, slim and approximately 30 years old. The Plaintiff is 5'3" and ¾ inches tall and was 41 years old at the time of the incident. The detectives, at that point had some evidence of lack of probable cause to arrest.

As stated above, at the 46th police precinct Plaintiff was denied a phone call the entire time he was in the custody of the police (the majority of the time the Plaintiff was confined to a cell

and obviously not free to leave though he was not, which was from approximately 10:30 a.m. Sunday October 3, 2010 until approximately 1:30 a.m. the morning of Monday October 4, 2010 when he was transported from the precinct to Bronx's Central Booking by an officer from the 46th precinct. Plaintiff was arraigned at a time approximating 10:30 a.m. – 12:30 p.m. on Monday October 4, 2010.

Plaintiff was transported to Bronx's Central Booking, along with approximately 6-8 other individuals in a small, dark "compartment" in the back of a marked police van that was not in the main area of the back of the van where one would expect either people or other kinds of cargo to be placed when transporting them from one place to another. This area was something of a very short and very narrow corridor with a built-in bench running the length of it, on which the arrestees sat close together, unable to stretch their legs even a little bit, and which, again, was unlit and in total darkness. It was on the driver's side of the van.

While in police custody and before leaving the precinct, Plaintiff, was not provided with anything to eat until approximately 13 hours had passed, at which point Plaintiff was extremely hungry as well as exhausted and enduring panic and anxiety attacks, paranoia and depression as a result of the police actions.

## Amendments

Plaintiff amends the complaint by adding the City of New York and the New York Police Department as a Defendant.

Plaintiff amends the complaint by pleading a Fourth Amendment claim for False Imprisonment up until the time of arraignment and beginning with the Defendants' trespass into the Plaintiff's apartment, and the detectives' conspiracy in committing the same pursuant to 42 U.S.C. § 1985.

Plaintiff also amends the complaint by pleading a claim for Punishment or Deprivation of Liberty without Due Process of Law as, at the precinct, neither of the detectives ever allowed the Plaintiff to make a phone call nor provide the Plaintiff with anything to eat until 13 hours had elapsed.

Plaintiff further amends the complaint by asserting a claim for violation of his right to privacy and conspiracy to commit the same (pursuant to 42 USC § 1985) by the two detectives who invaded the sanctity of the Plaintiff's home, without warrant, consent and absent exigent circumstances in order to arrest him.

Plaintiff amends the complaint by asserting a claim for both negligence and violation of Plaintiff's Due Process Right(s) as the Defendants knowingly, intentionally and willingly failed to comply with the mandate of N.Y. Criminal Procedure Law ("CPL") 140.15(2) to inform the Plaintiff of their authority and purpose and of the reason for Plaintiff's arrest prior to or upon entering the Plaintiff's apartment (or anytime thereafter) also in violation of the Plaintiff's Fifth Amendment Right against Deprivation of Liberty without Due Process of the Law as well as that pursuant to Article I § 6 of the New York State Constitution and Plaintiff's Fourth Amendment Right against per se and presumptively unreasonable seizure of Plaintiff inside of his home.

Plaintiff further amends the complaint by asserting a claim based on Monell liability that Defendant detectives utilized a long existing custom and/or usage of the City of New York through its Police Department of failing to: inform arrestees of their authority and purpose and reason for the arrest(s), failing to obtain an arrest warrant prior to entering an arrestee's home for the purpose of arresting him or her, and where they did not properly have consent to enter in the absence of exigent circumstances in violation of the Fourth and Fifth Constitutional

Plaintiff asserts an amended claim for Failure To Intercede against Detective Morales, the lead Detective throughout the case, For failing to prevent Detective Morales-Bell from entering, unlawfully, the plaintiff's apartment. As well as for initiating and arresting Plaintiff in his apartment unlawfully.

Amendments as well as Article I § 12 and Article I § 6 (respectively) of the New York State Constitution.

Plaintiff amends the complaint by pleading a claim against the City of New York for Negligent Hiring and Retention of the Defendant detectives who are either dismissive of the Constitutional and Statutory laws that govern them and indifferent to violating the rights of Citizens that are guaranteed to them by the Federal and State Constitutions as well as New York statutes, or are unaware of those laws and their proper application.

### Injuries to Plaintiff

As a result of the Defendants' actions, Plaintiff has since been in receipt of therapy for Posttraumatic Stress Disorder (PTSD), Anxiety, Paranoia, Depression among other conditions related to Defendants' actions (Approaching the 6 year mark). Plaintiff suffered Claustrophobia in the back of the Police van, as well as motion sickness in the police vehicles.

### Damages

Plaintiff claims damages, in an amount totaling One Million Seven Hundred Thousand ($ 1,700,000) Dollars compensatorally, punitively and nominally for the various claims and injuries to him by Defendants.

**I declare under penalty of perjury that the foregoing is true and correct.**

                                                                         Dwayne Parker-El
                                                                         1011 Carroll Place 4B
                                                                         Bronx, New York 10456
                                                                         (646) 961-2786

Alexander Noble          (212) 356-2357
Assistant Corporation Counsel
Special Federal Litigation Division
Attorney for Defendants
City of New York, Morales
And Morales-Bell
100 Church Street, Room 3-310
New York, N.Y. 10007

RECEIVED
2016 APR 25 P 7:00
U S DISTRICT COURT SDNY

Case 1:13-cv-06996-RWS   Docu

Pro Se Office
Room 200

USDNY
5TH

Dwayne Parker-El
1611 Carroll Place 4B
Bronx, New York 10456